## * LANE & A. v. MORRILL & A.

A bill in equity alleged that a petition for the creation of a new school district was presented to a joint board composed of the selectmen and school committee of the town; that said board were influenced to grant the petition by the offers of certain parties interested, made at the hearing, to furnish a school-house and $800 for the benefit of the new district, provided one were established.

*Held*, that the bill showed no ground for the interference of this court by injunction to restrain the defendants from organizing the new district under such decree.

IN CHANCERY. The bill alleges that on the 30th day of July, 1870, a petition signed by the defendants and others was presented to the selectmen and school committee of Sanbornton, praying that they would constitute a new school district in said Sanbornton from territory embraced within the limits of two existing districts in that town; and, after setting out various other matters, proceeds to charge that, at the hearing upon this petition, August 9, 1870, before the joint board of selectmen and school committee, the defendant Morrill corruptly, unlawfully, and with a view of influencing the action of said board, for his own private ends, &c., offered that, upon condition a new district should be formed, he would give to such new district a building for a school-house, with such reasonable amount of land appurtenant thereto as said committee and selectmen would designate; that Morrill and others also offered, as an inducement to granting the prayer of said petition, that they would give or guarantee the sum of $800, to be placed in the hands of a trustee for the benefit of the new district; that said selectmen and school committee, influenced by said corrupt and illegal offers, and not considering the wants, requirements, and welfare of the public, and the educational interests of said district, unlawfully and against the manifest interest of the inhabitants of district No. 10 and of the plaintiffs, agreed to grant the prayer of said petition, and did, in consideration of said offers, draw up and sign a report constituting a new district, &c.; that the action of said joint board constituting such new district was illegal by reason of the premises, so that no new district was legally constituted thereby; that the defendants, who are inhabitants of the new district, are notwithstanding about to organize the

---

* This case has been three times before the court, and upon bills with substantially the same allegations. The first bill was brought in the name of school district No. 10 against the joint board; the second, by some of the present plaintiffs against said board and others. Demurrers were filed in each instance.                    REPORTER.

same, and proceed to the election of officers, and demand a portion of the school money belonging to district No. 10.

· The bill concludes with a prayer for an injunction restraining the defendants from organizing the district, or holding any meeting therein, or demanding any portion of said school money, or doing any act recognizing the legal existence of said new district, &c.

The defendants demurred generally to the bill.

*Barnard & Sanborn*, for the plaintiffs.

*Shirley* and *Pike & Blodgett*, for the defendants.

LADD, J.   We are clearly of opinion that the demurrer must be sustained.

Section 9 of chapter 78 of the General Statutes provides that " the school committee and selectmen of any town divided into districts, upon petition of persons interested, after hearing the parties, may change the lines of adjoining districts, and may constitute new districts, or unite the whole or part of any district to an adjoining district, a majority of each board concurring therein, and their decision in writing being recorded on the town records."

There is no doubt but that the action of the joint board, thus constituted within the scope of the authority conferred upon them, is judicial and final.   No appeal is provided to any other tribunal, and no mode of transferring exceptions to the legality of their rulings, or of their decision to this court, is furnished by the statute.

It is well settled, and is, indeed, admitted by the plaintiffs, that this court, sitting as a court of equity, has no superintendence of inferior tribunals; but it is said that, inasmuch as the selectmen and school committee are not parties to this proceeding, and are not to be directly affected by the result, the legality of their action may be thus inquired into collaterally, without exercising the supervisory power which resides only in courts of law.

If the grievance of which the plaintiffs complain be examined, it will be found to be nothing more than that this joint board admitted irrelevant and illegal evidence at the hearing before them, and that, influenced by such illegal and improper evidence, and the considerations growing out of it, they decided the matter differently from what they otherwise would, and against the manifest interest and right of the plaintiffs.   This is stating the matter quite as strongly as it is stated in the bill.   They therefore ask the court to restrain the defendants from any action whatever based upon that decision.

In other words, we are asked to examine into the proceedings had before this board, and if it turns out that they erred, or mistook the law or their duty in the admission of evidence, we are to abrogate their judgment by a perpetual injunction against all persons whose interest or wish it may be to act under it, while at the same time it is admitted that the superintendence of inferior tribunals is no part of the equity

power of this court.   The proposition comes directly to this, that the court shall entertain and consider, on a bill in equity, any and all exceptions that may be taken to the admission or rejection of evidence before tribunals of this sort; and what is more, if upon such revision it should be found that the tribunal erred, the matter is not to be sent back to them for the correction of their error, but the whole proceedings are to be practically annulled by the summary process of injunction.

If the law presents such an anomaly, it is plain that this court must hereafter be prepared to revise, upon a bill in chancery, as upon writ of error, bill of exceptions, or petition for *certiorari*, all trials had before such tribunals ; and, in the mean time, all action under the decision of a tribunal which the legislature has clothed with exclusive and final jurisdiction in the premises must be suspended, to await the decision of the legal questions thus raised.   This cannot be so.

Whether the error complained of here can be reached by *certiorari*, or whether it would be sufficient to quash the doings of the board were it brought before the court in that way, we have not considered.   It is sufficient for the present case that the remedy, if any exists, must be found in proceedings brought upon the law side of the court.

*Bill dismissed upon the demurrer.*